UNITED STATES of America

v.

Lacy STOCK, a/k/a Russell
Rogers, Appellant.

No. 91–3020.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1991.

Decided Oct. 22, 1991.

Daniel E. Ellenbogen, Washington, D.C. (appointed by the Court) for appellant.

Kenneth F. Whitted, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. and John R. Fisher, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before RUTH BADER GINSBURG, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

A jury found appellant Lacy Stock guilty of unlawful possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii). On appeal Stock argues that the district court improperly prevented him from confronting a witness with prior statements that omitted an aspect of his trial testimony. We agree that the district court erred, but because the error was harmless, we affirm.

* * *

According to evidence introduced by the government, on July 31, 1990, four police officers in an unmarked car drove into an alley and noticed what they thought was a drug sale. Officers John Cunningham and Donald Bell, in the front seat, saw Stock displaying a brown medicine vial to the occupant of a van. Officers Bradley Belden and Lance Harrison, in the back seat, also saw Stock next to the van, but did not see whether he had anything in his hand. As the police officers drove closer, Stock appeared to notice them and walk away from the van and toward a dumpster. Belden and Harrison got out of the police car. Officer Bell drove the car closer to Stock, and Cunningham got out. At this point Cunningham saw Stock pull his hand from a slot on the side of the dumpster, walk away from the dumpster, and say, "I don't have anything." Bell, Belden and Harrison did not see Stock's hand movements but did see him next to the dumpster. In a slot on the side of the dumpster, Harrison found a brown medicine vial containing a little more than seven grams of cocaine; Belden retrieved $430 from one of Stock's pockets.

Two witnesses for the defense testified that they saw the arrest. One said that Stock held a bottle of beer in his hand, not a medicine vial. The other said that she had never seen the medicine vial in Stock's hand. A third witness, Stock's girlfriend, testified that the money in Stock's pocket was hers. She had given the money to him for safekeeping, and they were planning to use it to take a trip to Virginia to attend the funeral of Stock's cousin.

* * *

Stock asserts error in the trial judge's refusal to allow defense counsel to cross-examine Officer Cunningham on a discrepancy between his testimony and his past statements about the case. At trial Cunningham testified that he heard Stock say "I don't have anything" as Stock walked away from the dumpster. But Cunningham had not included this statement in his police report, the affidavit he filed with the complaint, or his testimony to the grand jury. Defense counsel tried to ask the officer why he had not mentioned the statement earlier. But the trial judge

without explanation sustained the prosecutor's objection to this line of questioning. Stock argues that this restriction of cross-examination violated his rights under the confrontation clause of the sixth amendment. See, e.g., *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The government responds that the prior omissions were not inconsistent with Cunningham's testimony; that in any event the omitted point was merely "collateral" or only marginally relevant; and that the trial court's exclusion of the cross-examination was a justifiable exercise of discretion to avoid a waste of time. Although the government's answers may be telescoped into a single contention—that the trial court was within its discretion in (implicitly) finding the alleged inconsistency too dubious and trivial to justify the necessary time, cf. *United States v. Robinson*, 530 F.2d 1076, 1081 (D.C.Cir.1976) (reformulating question whether issue is "collateral" as a balancing between probative and prejudicial value)—we address the arguments separately.

■ One may impeach a witness by asking him about prior inconsistent statements. Prior statements that omit details covered at trial are inconsistent if it would have been "natural" for the witness to include them in the earlier statement. See *Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980) (citing 3A Wigmore, Evidence § 1042 at 1056 (1970)). The test is plainly elastic, as the "naturalness" of a witness's decision to omit a point may depend on nuances of the prior statement's context, as well as on his own loquacity. While the district court must have some discretion over the matter, appellate courts have found preclusions to be error. For example, in a price-fixing case, *United States v. Standard Oil Co.*, 316 F.2d 884, 891–92 (7th Cir.1963), a government witness spoke of inter-company "assurances" on pricing that he had never mentioned in an interview with the defendant's lawyers, and the court found the trial judge's preclusion of cross on the subject reversible. And in *United States v. Ayotte*, 741 F.2d 865, 870–71 (6th Cir. 1984), a drug enforcement agent testified that the defendant had received money from a coconspirator and became upset when the agent expressed an intent to deal in the future directly with the coconspirator rather than the defendant, both points neglected in his grand jury testimony and official report. Citing *Jenkins* and Wigmore, the court found error in the trial court's refusal to allow cross-examination on the discrepancy. Compare *United States v. Leonardi*, 623 F.2d 746, 756–57 (2d Cir.1980) (testimony that defendant had been paid after the robbery and that a handgun had been sold was mere "augment[ation]" of prior statements omitting these events).

In the absence of some countervailing factor, we think that defense counsel deserved a chance to convince the jury that Officer Cunningham's omission of Stock's "I don't have anything" was inconsistent with his testimony. To be sure, Stock's statement was not necessary to the government's establishing the crime of possession with intent to distribute. It was, however, clearly material; the recipients of Cunningham's prior statements (such as the grand jury), might have viewed the statement, a denial of wrongdoing expressed before any accusation, as showing consciousness of guilt. (They could also have construed it the other way, as an innocent man's spontaneous effort to tell the officers that their suspicions were mistaken.) At a bare minimum, the statement (the only reported communication from the defendant) would have added color and depth to Cunningham's account. Thus a jury might reasonably have found Cunningham's omission unnatural and the prior statements inconsistent with his trial testimony.

■ The government's claim that the issue was merely "collateral" is made haphazardly, a fragment buried in its more

general idea that the issue was only "marginally relevant". See Government Brief at 9. But cross-examination is "unrehearsed and exploratory in nature". Louisell & Mueller, Federal Evidence § 129 at 94 (1985). Accordingly, this court has suggested that there should be great latitude for cross-examination on issues raised in direct testimony; cases upholding a court's exclusion of *extrinsic* evidence offered to impeach a witness, on the ground of the issue's being "collateral", do not govern the scope of cross-examination itself. *United States v. Pugh*, 436 F.2d 222, 225 (D.C.Cir.1970). Because of the statement's possibly inculpatory character, the ban on use of extrinsic evidence of collateral matters would probably not reach it in any event. See *Ewing v. United States*, 135 F.2d 633, 641 (D.C.Cir.1942) (a statement is collateral if it concerns a fact that could "have been shown in evidence for any purpose independently of the self-contradiction"); cf. 3 Weinstein, Evidence ¶ 607[06] at 108–09 (1987) (criticizing test as too restrictive).

 Finally the government invokes the trial court's "wide latitude ... to impose reasonable limits on such cross-examination based on concerns about ... interrogation that is repetitive or only marginally relevant." See *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435; see also *United States v. Gambler*, 662 F.2d 834, 839 (D.C.Cir.1981) (court may balance delay and confusion of exploring matter on cross against its likely value). The government claims that if the court had allowed the counsel to explore the issue, there would have been "a needless waste of time" as the officer explained the purpose of the prior statements and why it was natural to omit Stock's remark. Government Brief at 10. Here the argument clearly treats the issue as one of balancing the potential value of the cross-examination against its tendency to prolong the trial.

But if it were so obvious that the contexts of Cunningham's three prior statements did not call for inclusion of the remark, it is hard to see why his explanations should have been very time-consuming. Of course the trial judge must be able to keep cross-examination under control, so that preclusion might well have been justifiable if the cross had already been "extensive, repetitive and protracted". *Pugh*, 436 F.2d at 224. But none of those labels applies here. Cunningham's direct examination had occupied eight pages of transcript; the defense had taken eleven for cross when it started into the omissions problem. Not only was there little ground to fear that the issue itself would have proved time-consuming, but counsel could hardly be accused of having dragged out the trial unduly. Accordingly, we find that the court's forbidding defense counsel to cross-examine Cunningham on this issue violated Stock's right to confront witnesses.

\* \* \*

 The government argues that any possible error was harmless. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). A constitutional error in curtailment of cross-examination qualifies as harmless if, "assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nevertheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. The test is stringent, as it requires the appellate court to find beyond a reasonable doubt that the jury would have found guilt beyond a reasonable doubt. The core of the inquiry is the strength of the government's residual case. *Id.*[1] Where that is overwhelming, the error is harmless. See *Schneble v. Florida*, 405 U.S. 427, 430–32, 92 S.Ct. 1056, 1058–60, 31 L.Ed.2d 340 (1972); *United States v. Coachman*, 727 F.2d 1293, 1297–98 (D.C.Cir.1984).

---

1. *Van Arsdall* also refers to "the extent of cross-examination otherwise permitted", see *id.*, but that goes more logically to the question of whether the exclusion was error at all, and we have already considered it under that head.

Here, of course, the *directly* challenged component of Cunningham's testimony, the defendant's exclamation "I don't have anything" at the moment he was accosted, was neither needed to supply an essential element of the crime nor even clearly inculpatory. It is not disturbing that the error prevented defense counsel from establishing whether Stock actually made the statement.

What is disturbing is that the trial judge's error prevented defense counsel from casting doubt on Officer Cunningham's reliability as a witness. The discrepancy in the reports gave defense counsel an opening for arguing that Cunningham had a poor memory or was fabricating parts of his story in order to ensure conviction. Cross-examination that gave the jury reason to believe either of these alternatives might have caused it to discount all of Cunningham's testimony. To reflect "the damaging potential of the cross-examination", we examine the record on the assumption that the jury might have discarded Cunningham altogether. That leaves Bell as the only witness who saw Stock holding the brown medicine vial while standing next to the van, and none who saw him putting his hand up to the dumpster slot where the medicine vial was found, as Cunningham had.

■ First we note and reject Stock's suggestion that we should exclude Officer Bell's testimony from our harmless error analysis because it was not offered until the government's rebuttal. We can find no authority for this proposition, and we see no reason to accept it. If the trial court had allowed the cross-examination Stock sought, and if the defense had appeared to score, the government would presumably have taken whatever steps were available to shore up its case-in-chief. Taking the Bell testimony into account in our harmless error analysis, then, is a proper (and properly conservative) way of estimating what the jury would have done if defendant's preferred scenario had unfolded. The result is *a fortiori* from *United States v. Foster*, 783 F.2d 1082 (D.C.Cir.1986), where we held that a defendant waives his objection to the trial court's denial of a motion for judgment of acquittal at the end of the government's case-in-chief where he proceeds to offer evidence, so that the defendant's conviction may be upheld even though he would have been acquitted if the trial court had ruled correctly at the close of the government's case. See also *United States v. Snyder*, 872 F.2d 1351, 1356–57 (7th Cir.1989) (admission of hearsay is harmless error where the defendant's own testimony supplied corroboration, even though the defendant might not have testified if the hearsay had been excluded).

Bell, Belden and Harrison, the three officers left once we strike Cunningham, collectively made out a powerful case. Bell saw the defendant next to the van, displaying a brown medicine vial to its occupant; Belden and Harrison also placed Stock next to the van at the moment of the squad car's arrival. All three saw him seconds later standing next to the dumpster, Bell placing him almost close enough to touch it and recalling no one else in the immediate vicinity of the dumpster. A few minutes later Harrison found a brown medicine vial containing cocaine in the dumpster, and Belden found $430 in cash in Stock's pocket. It would defy common sense to think that the brown medicine vial in the dumpster belonged to someone else, and that the brown medicine vial in Stock's hand was never recovered. If the jury believed Bell, as corroborated by Belden and Harrison, we can be confident it would have found Stock guilty beyond a reasonable doubt.

The defense evidence was weak. Two defense witnesses, a friend and a longtime acquaintance of the defendant (one convicted of manslaughter in 1987), insisted that they were watching Stock as he talked to the occupant of the van, and that he was not holding a medicine vial. But their stories contradicted basic features of the police account, so that to credit them the jury would have had to believe that the police conspired to fabricate most of their ac-

count, including the day of the week (July 31 (a Tuesday) according to the police, versus a Friday, as the first defense witness claimed); the time of day (8:15 PM according to the police, versus 4 or 5 PM according to the defense witnesses); and movements of the police cruiser (up onto an embankment according to the police, never on the embankment according to the defense witnesses). Moreover, one of the defense witnesses sat on the hood of her car, which faced away from the key events.

Finally, the third defense witness, the defendant's girlfriend, sought to explain the $430 in Stock's pocket as her money, intended to be used by them both to go by bus to Virginia to attend the funeral of a cousin of the defendant. She testified that they planned to take a 7 PM bus, but the officers placed the arrest at 8:15. To accept the story, the jury would have to believe either that the police lied about the time, or that Stock remained on the street until well after 8 PM, quaffing beer (according to the defense witnesses), while his bus made its way deep into Virginia. The jurors would also have to accept the idea that $430 was a reasonable amount to carry in one's pocket for a bus trip to Virginia. Even then, they would have to overcome obvious blanks in the defense, such as the lack of evidence that Stock had a cousin in Virginia or that this cousin had recently died.

Of course it remains conceivable that without Cunningham's testimony the jurors would have discredited Bell's testimony of seeing Stock with the medicine vial in hand and have instead believed the defense witnesses. See, e.g., *Arizona v. Fulminante*, — U.S. ——, 111 S.Ct. 1246, 1257–61, 113 L.Ed.2d 302 (1991) (erroneous admission of defendant's confession was harmful, because circumstantial evidence was insufficient, and jury might not have believed another confession—recounted in testimony rife with contradictions and implausibility—had it not been corroborated by the one

erroneously admitted); *United States v. Pryce*, 938 F.2d 1343 (D.C.Cir.1991) (erroneous restriction on cross-examination was harmful, because the somewhat redundant testimony of the other two witnesses was not entirely reliable, and impeachment of the witness in question might have changed the jury's mind); *Holland v. Scully*, 797 F.2d 57, 67 (D.C.Cir.1986) (erroneous admission of confessions of codefendants was harmful, because the only corroborating witness, another codefendant, was unreliable).

In each of these cases, however, the ostensibly redundant witnesses were unreliable. By contrast, Officer Bell was a reliable witness—not a codefendant or co-conspirator, but a police officer, with a clear, unobstructed view of the events to which he testified. Even without Cunningham, his testimony was corroborated in important respects by other police officers. And Stock's effort to explain away the $430 in cash may well have seemed so fanciful as to reinforce the government's interpretation of the sum as proceeds from the sale of drugs. The evidence introduced by the government, even in the absence of Cunningham's testimony, was so much more credible than the defense testimony that we can conclude without reasonable doubt that the jury would have found Stock guilty.

We therefore affirm the conviction.

*So ordered.*