**UNITED STATES of America**

v.

**Charles N. LLOYD, Jr., Appellant.**

No. 92–3037.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1993.

Decided May 7, 1993.

As Amended May 20, 1993.

Christina T. Uhlrich, with whom Newman T. Halvorson, Jr. and Carol Elder Bruce, Washington, DC, were on the brief, for appellant.

Chrisellen R. Kolb, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Thomas J. Tourish, Jr. and Richard W. Roberts, Washington, DC, were on the brief, for appellee.

Before: WALD, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Appellant Charles N. Lloyd, Jr. went to trial on fourteen charges arising out of his alleged preparation of false federal and District of Columbia tax returns for numerous individuals, including himself. A jury convicted him on four counts: three of aiding and abetting the preparation of false federal income tax returns for three named taxpayers (not including Lloyd), in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2(a)–(b); and one count of first degree fraud, in violation of D.C.Code §§ 22–105, 3821(a), 3822(a)(1), for causing false income tax returns to be filed in the District of Columbia for one or more of five named taxpayers. After the jurors failed to reach a verdict on the other nine counts, the court dismissed them on the government's motion.

Only one of Lloyd's grounds for appeal merits discussion. He argues that the judge erroneously denied his request to order the government to turn over the tax returns of the government's taxpayer witnesses for the three years prior to the returns upon which the indictment was based. Because the trial judge and the government were operating under a mistaken view of what was required for such returns to be "material" to the preparation of the defense under Fed. R.Crim.P. 16(a)(1)(C), we remand the record to allow the district court to determine whether Lloyd should have been allowed access to any of the prior-year tax returns, and if so, whether a new trial is warranted.

\*   \*   \*

Almost six months before appellant's trial, his counsel requested from the prosecution "[c]opies of tax returns for each taxpayer named in the indictment for the three years preceding the ... tax years included in the indictment." The government initially responded by stating that it had requested those returns from the federal and District of Columbia tax service centers and would provide them to defense counsel when they arrived. It then switched position, writing to counsel that it could not provide the defense with copies of the described returns without a court order under 26 U.S.C. § 6103. That section sets forth various conditions upon which a tax return "may be disclosed" in a judicial or administrative proceeding, including a court order of disclosure under the Jencks Act (18 U.S.C. § 3500) or Fed. R.Crim.P. 16. 26 U.S.C. § 6103(h)(4)(D). Defense counsel responded to the government's letter by moving to require production of the returns under Rule 16, arguing that they were material to the preparation of

the defense. See Fed.R.Crim.P. 16(a)(1)(C). The court denied the motion.

Curiously, defendant at no time sought production of the taxpayer witnesses' returns under the Jencks Act, although the printed representation at the end of Form 1040[1] might appear, in context, to make any such return a "statement" of the taxpayer. See 18 U.S.C. §§ 3500(b) & (e)(1). But see *United States v. Carrillo*, 561 F.2d 1125, 1128 (5th Cir.1977). Thus we have here no claim under § 3500. Conversely, the government does not invoke Rule 16(a)(2)'s exemption for "statements made ... by government ... witnesses." Accordingly, we do not address either § 3500 or the corresponding exemption in Rule 16.

The defense renewed the motion in oral proceedings the day before the trial began and elaborated on its theory of materiality. Defense counsel explained that if the prior returns showed that the taxpayers, before engaging Lloyd's services, had prepared returns with errors similar to those allegedly present in the returns upon which the indictments were based, the jury might infer that the taxpayers had supplied Lloyd with the false information and that therefore he lacked the requisite fraudulent intent. Defense counsel also agreed with the judge's suggestion that the returns could be used to impeach the taxpayer witnesses, many of whom had sworn that the data on their filed returns were not what they had given Lloyd.

The district court again denied the motion, taking the view that the defendant had "a very heavy burden" to show materiality and adopting the government's argument that false information on a taxpayer's return for one year would not tend to exculpate a preparer who made false representations on a later return of the same taxpayer.

The day after the trial began government counsel raised the discovery issue before the district judge, reporting that the federal and DC tax authorities could not locate the prior returns of many of the taxpayers. The government submitted the available ones to the court for *in camera* review, representing

that with the possible exception of the prior returns for Donald Cooper and Diane Caldwell, the returns contained nothing material to the preparation of the defense. The trial court indicated that it would review only the returns of those two. When defense counsel attempted to renew its motion to require the government to produce the prior returns, the judge stated that he would "not decide [the motion] at this time." He made no further findings on the record with respect to any of the returns, either those that the government dubbed immaterial or those it dubbed possibly material.

\* \* \*

■ Here appellant argues that the government search was inadequate; after being told that some of the returns were not in the respective tax authorities' normal files, the government evidently made no further efforts. Lloyd makes the point that as the government had investigated some of the tax years of these taxpayers, one might well expect the desired returns to have been moved to investigative files. But Lloyd failed to raise the issue below, instead apparently accepting the government's representation that only the proffered returns were available; he is therefore barred from raising the issue on appeal.

■ Thus we turn to the defendant's argument that the prior returns are material and discoverable under Rule 16(a)(1)(C) and that the trial court improperly imposed a "heavy burden" of materiality in denying his Rule 16 motion. Rule 16(a)(1)(C) states that

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents ... or copies or portions thereof, which are within the possession, custody or control of the government, and which are *material to the preparation of the defendant's defense....*

Fed.R.Crim.P. 16(a)(1)(C) (1993). To show materiality under this rule the defendant must demonstrate that the requested evidence

---

**1.** "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief they are true, correct and complete."

bears some abstract logical relationship to the issues in the case.... There must be some indication that the pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor.

*United States v. Caicedo–Llanos,* 960 F.2d 158, 164 n. 4 (D.C.Cir.1992) (quoting *United States v. Ross,* 511 F.2d 757, 762–63 (5th Cir.1975)); see *United States v. George,* 786 F.Supp. 56, 58 (D.D.C.1992). This materiality standard normally "is not a heavy burden," *id.;* rather, evidence is material as long as there is a strong indication that it will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* (quoting *United States v. Felt,* 491 F.Supp. 179, 186 (D.D.C. 1979)).

There are two ways in which the taxpayers' prior returns might tend to be materially exculpatory. First, even if the taxpayer did not testify, a similar treatment of a similar issue in a prior year, as to which the indicted tax preparer had played no role, would tend to suggest that the falsity originated with the taxpayer rather than the preparer. Second, where the taxpayer takes the stand and testifies that he supplied the preparer with accurate information, prior returns with information similar to that in the indictment returns have the makings of a promising tool for impeachment.

Against this the government offers us the truism that no two years are necessarily identical—a taxpayer's income, deductions and other items commonly vary from year to year. From this the government leaps to the conclusion that the prior returns have no relevance. The truism, however, co-exists with the offsetting truism that there is a good deal of continuity in human affairs. For some tax items the continuity is quite strong. For example, the number of one's children normally does not fluctuate radically from year to year, and even changes in eligibility for exemption tend to come gradually. Thus the year-to-year variability of a taxpayer's circumstances does not necessarily undercut the potential materiality of prior-year returns.

Moreover, it is hardly unusual for the value of a prior statement for impeachment purposes to depend on implicit assumptions. For omissions from a prior statement, for example, the premise is that in context it would have been "natural" for the witness to have included the omitted detail. See, e.g., *United States v. Stock,* 948 F.2d 1299, 1301 (D.C.Cir.1991). Here the implicit assumption of substantial continuity plays the same role. The possibility that the witness can show the assumption to be false does not in itself justify exclusion, see *id.* at 1302, though of course the trial court might be entitled to limit cross-examination to prevent the trial from being unduly prolonged by what may prove a marginal point, see *id.* Here, of course, the only issue is *disclosure* to the defense, so the problem of trial delay is not relevant.

The potentiality of the returns is evident in this case. Despite the defendant's inability to extract prior returns from the government, he was able to confront Thelma Davis with a prior return and show that she had taken an exemption on it based on grounds that were apparently as flimsy as those supporting the exemptions on the return prepared by Lloyd. Trial Transcript 10/25/91 at 108–09, 120–24. Similarly, he drew a concession from one taxpayer-witness, Donald Cooper, that in prior years he had broadly claimed exemptions for his children, although he could not remember for how many:

> [Counsel]: By the way, did you claim dependents on your '84 tax returns?
>
> [Cooper]: '84?
>
> [Counsel]: Yes, the year before Mr. Lloyd prepared them.
>
> [Cooper]: Yes, I did.
>
> [Counsel]: How many dependents?
>
> [Cooper]: I really don't know.
>
> [Counsel]: Can you give me a guess?
>
> [Cooper]: I don't know.
>
> [Counsel]: You can't even give me a ball park figure?
>
> [Cooper]: No.
>
> [Counsel]: How many children did you have in '84?
>
> [Cooper]: I had nine.
>
> [Counsel]: How many of those nine did you claim?

[Cooper]: I don't know.

[Counsel]: How many did you claim in 1983?

[Cooper]: I do not know.

[Counsel]: How many did you claim in 1982?

[Cooper]: I don't know.

[Counsel]: You can't give me or the jury any estimate of how many of those you claimed?

[Cooper]: No, I cannot.

Trial Transcript 10/24/91 at 127–28. The government tried on redirect to rehabilitate Cooper on this point by asking about possible differences in circumstances, but the effort was unavailing and was quickly abandoned. *Id.* at 153–54; compare *id.* at 93–94.

The jury failed to reach a verdict on either the Thelma Davis or the Cooper count. It seems reasonable to infer that the apparent contradictions between their prior-year conduct, and their assertions about Lloyd's role in the indictment years, played a role in hanging the jury. Similar information for other taxpayer witnesses could similarly have led to dismissal of the counts based on their returns and possibly have undermined the government's whole case.

There remains the possibility that under 26 U.S.C. § 6103(h)(4)(D) the government might properly withhold returns satisfying Rule 16's materiality standard. The judge understood that section to impose on Lloyd a "very heavy burden", contrary to the normal Rule 16 standard discussed above. In reaching that conclusion the trial court relied on § 6103(h)(4)(D), which allows disclosure of a return or return information in a state or federal judicial proceeding pertaining to tax administration:

> (D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or Rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confiden-

tiality of returns and return information as set forth in this title.

26 U.S.C. § 6103(h)(4)(D).

■ There may be contexts in which § 6103(h)(4)(D)'s reference to the "congressional policy favoring the confidentiality of returns" may take the form of raising Rule 16's materiality standard, but if so this is not one of them. Here the government claimed that the defendant caused false returns to be filed, and offered the testimony of taxpayers to support its view that the falsity was the responsibility of the preparer. The taxpayers' interest in the confidentiality of otherwise material prior-year returns seems trivial in the circumstances. In this context, then, we understand § 6103(h)(4)(D)'s injunction to consider confidentiality to be limited to such remedies as redacting portions that are plainly immaterial and especially sensitive.[2]

Normally we accept the government's representations as to what documents in its possession are "material". See *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987) (prosecutor's decision as to whether exculpatory *Brady* information exists is usually final); *United States v. Brooks*, 966 F.2d 1500, 1504 (D.C.Cir. 1992). Here, however, the government's representations that certain returns were not material appears likely to have been based on a misconception as to how prior returns might be material, and possibly also on a misconception of the effect of § 6103(h)(4)(D) on the requisite materiality. We therefore remand the record to the district court in order for the government to make a redetermination as to the materiality of the returns that its investigation produced. Any returns that the government does not turn over to the defendant should be reviewed for materiality by the judge *in camera* and where appropriate turned over to the defense. Appellant may file a motion for a new trial in the district court, and if the court grants the motion, this appeal will be dismissed. See *White v. United States*, 349 F.2d 965, 968 (D.C.Cir.1965); *United States v. Bujese*, 371

---

2. Because of our disposition of appellant's Rule 16 claim, we need not reach his two other arguments for requiring production of the returns; that such production should have been compelled under 26 U.S.C. § 6103(h)(4)(A), (B), or

(C); and that failure to produce the returns violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

F.2d 120, 122 (3d Cir.1967). In considering that motion, the court will bear in mind Lloyd's contention that, given the government's theory that the returns prepared by him demonstrated a pattern, an erroneous non-disclosure as to any taxpayer might have undermined the rest of the government's case. In the absence of a new trial, we will retain jurisdiction.

*So ordered.*