UNITED STATES of America

v.

Ahmed Muse SALAD, Abukar Osman Beyle, Shani Nurani Shiekh Abrar, Mohamud Hirs Issa Ali, Mohamud Salad Ali, Mounir Ali, Jilani Abdiali, Said Abdi Fooley, Muhidin Salad Omar, Mahdi Jama Mohamed, Borhan Abdirahman Yusuf, Abdi Jama Aqid, Ahmed Sala Ali Burale, and Ali Abdi Mohamed, Defendants.

Criminal No. 2:11cr34.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 13, 2011.

**504**

Benjamin Lucas Hatch, Joseph E. De-Padilla, United States Attorney's Office, Norfolk, VA, Brian J. Samuels, United States Attorney Office, Newport News, VA, for United States of America.

Larry M. Dash, Paul G. Gill, Lawrence H. Woodward, Jr., Stephen A. Hudgins, Jon M. Babineau, David W. Bouchard, James R. Theuer, James E. Short, David M. Good, John C. Gardner, William J. Holmes, Robert B. Rigney, Richard S. Yarow, Melinda Ruth S. Glaubke, Harry Harmon, for Defendants.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is currently before the Court on a motion filed by Abukar Osman Beyle ("Beyle" or "Defendant") on March 16, 2011, requesting that the Court order the Government to maintain possession of the Quest, a yacht upon which the alleged crimes occurred, in an unaltered condition, until such time as counsel and any necessary experts have been able to inspect the vessel. Since the filing of this motion, seven other Defendants have adopted Beyle's motion. On March 30, 2011, the Government filed a response to the motion, requesting the Court deny Beyle's request. After examination of the briefs, the Court has determined that a hearing on the instant motion is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. For the reasons stated herein, the Court **GRANTS** the Defendant's motion and **ORDERS** the Government to maintain possession of the Quest, in an unaltered condition, until May 31, 2011.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

This matter relates to the alleged hijacking of "an American yacht named the Quest" in February 2011, in the course of which the four U.S. citizens on board (Scott Underwood Adam, Jean Savage Adam, Phyllis Patricia Macay, and Robert Campbell Riggle) were allegedly held hostage for ransom by Defendants, and ultimately killed. Docket No. 3 at 5–6. By indictment filed under seal on March 8, 2011, and subsequently unsealed on March 10, 2011, the Government has charged each of the fourteen Defendants in this matter with three felony counts: Count 1, Piracy Under the Law of Nations, in violation of 18 U.S.C. §§ 1651 and 2; Count 2,

Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. §§ 1201(c) and 3238; and Count 3, Possessing, Using, Carrying, Brandishing, and Discharging a Firearm (to wit, a rocket-propelled grenade, a destructive device) During a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 3238, and 2. Count 1 is alleged to have occurred on the high seas, and Counts 2 and 3 are alleged to have occurred in the special maritime and territorial jurisdiction of the United States. Trial in this matter was originally set for May 17, 2011; however, pursuant to this Court's Order of April 11, 2011, 779 F.Supp.2d 509, 2011 WL 1652132 (E.D.Va.2011), certifying this case as complex, trial has been rescheduled for November 29, 2011. Docket No. 125.

On March 16, 2011, Beyle filed a motion requesting that this Court order the Government to maintain possession of the Quest in an unaltered condition until such time as counsel and any necessary experts can inspect and review it. According to this motion, the Defendant "has been advised by the United States that the Quest is currently located in or near Djoubti [sic], Africa and is in the possession of the government of the United States." Def.'s Br. 1. Further, the Defendant claims that the Government has advised him that the yacht "may be turned over to the family of the victims in the near future." Id. As to the reasons the Defendant needs the Government to preserve the yacht in an unaltered condition, Beyle claims that "viewing the scene of the crime is an absolute requirement in a crime that involves multiple shootings, multiple victims and multiple alleged shooters." Id. at 2. Specifically, Beyle contends that "[t]he various distances, angles, lines of sight, and locations

of objects on the Quest are but a few of the issues which the defense needs to investigate." Id.

In the Government's response of March 30, 2011, it requests that the Court deny the Defendant's motion. According to the Government, "[f]ollowing the events of February 22, 2011, the Quest was examined by an Evidence Response Team from the Federal Bureau of Investigation (ERT)." Government's Br. 2. "[T]he United States understands that this examination included video of the Quest, numerous photographs, and the taking of various items of evidence." Id. Following this investigation, "[t]he Quest was cleaned on March 1, 2011, and immediately thereafter taken to the Djiboutian Navy Yard in Djibouti, Africa, where it currently remains."[1] Id.

According to the Government, after the vessel was processed by the ERT, "the decision regarding the disposition of the Quest was transferred to the family of the victims." Id. at 3. However, the Government also represented that the United States Consular Section of the State Department has assumed a "provisional conservateurship" of the Quest. Id. In this capacity, the Government is paying the security and docking fees for the vessel, with the family willing to allow the vessel to remain in its current location until the end of April 2011. Id. While the family is scheduled to have complete control over the vessel at that time, the Government "intends to keep track of the whereabouts of the Quest and will attempt to facilitate any defense requests for access," Id. Additionally, the Government is planning on providing the Defendants with the results of the ERT processing of the Quest. Id. at 5. According to the Government, "the

---

1. According to the Government, the vessel was cleaned because it represented a "bio- hazard." Government's Br. 2.

ERT processing of the Quest, the results of which are being and will be turned over through discovery, satisfies its obligations under the Constitution and Federal Rules of Criminal Procedure." *Id.* With these arguments in mind, the Court now turns to the substance of the Defendant's request.

## II.  DISCUSSION

### A.  Rule 16 of the Federal Rules of Criminal Procedure and the Court's Inherent Authority to Order Evidence Preserved

■ Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides that, "[u]pon a defendant's request, the government must permit the defendant to inspect ... tangible objects, buildings or places ... if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense...." Fed.R.Crim.P. 16(a)(1)(E). Based on the plain language of the Rule, in order for evidence to be discoverable under this provision, the evidence must be (1) tangible, (2) within the Government's possession, custody or control, and (3) material to preparing the defense. When applying this rule, "decisions regarding whether a party has complied with Rule 16 are left to 'the sound discretion of the trial court' and [the court of appeals] review[s] such orders only 'for an abuse of discretion.'" *United States v. Young*, 248 F.3d 260, 269 (4th Cir.2001) (quoting *United States v. Fletcher*, 74 F.3d 49, 54 (4th Cir.1996)).

Understandably, the parties have not argued that the Quest is not a tangible object. Therefore, the Court's analysis begins with the issue of possession, custody or control—which the Government contends it does not have over the Quest, Government's Br. 4–5. According to the Government, "[w]hile the Department of State maintained temporary physical custody as a courtesy, decisions and control regarding the Quest's disposition were turned over to the family of the victims after the Quest was processed by the ERT." *Id.* Despite the Government's argument, this Court finds that the Government currently has possession of the vessel, if not custody and control, by virtue, at the very least, of its status as the provisional conservator of the Quest.

According to the United States Code, "[w]henever a United States citizen or national dies abroad, a consular officer shall act as the provisional conservator of the portion of the decedent's estate located abroad and ... shall ... take *possession* of the personal effects of the decedent within his jurisdiction." 22 U.S.C. § 2715c(a)(1) (emphasis added). Therefore, by statute, the Government is in possession of the vessel while it serves as a provisional conservator. As further indicia of this possession, the United States has agreed to pay the Quest's docking and security fees. Government's Br. 3, Although the Court is cognizant of the fact that the United States has given up the right to make "decisions and control regarding the Quest's disposition," *id.* at 5, that fact alone does not militate against a finding that, at this point, the Government has some semblance of possession over the Quest.

■ However, possession of the vessel, without more, is insufficient to trigger the requirements of Rule 16(a)(1)(E). In order for the vessel to fall within the provisions of the rule, it must also be "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E)(i). According to the Fourth Circuit, "[f]or the defendant to show materiality under this rule, '[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *Unit-*

*ed States v. Caro,* 597 F.3d 608, 621 (4th Cir.2010) (quoting *United States v. Ross,* 511 F.2d 757, 763 (5th Cir.1975)). It has also been observed that " 'evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' " *Id.* (quoting *United States v. Lloyd,* 992 F.2d 348, 351 (D.C.Cir.1993)).

■ In the present case, Beyle claims that an examination of the boat is material to his defense because "viewing the scene of the crime is an absolute requirement in a crime that involves multiple shootings, multiple victims and multiple alleged shooters." Def.'s Br. 2. According to Beyle, "[t]he various distances, angles, lines of sight, and locations of objects on the Quest are but a few of the issues which the defense needs to investigate." *Id.* Furthermore, while the Government denies that an examination is necessary, it acknowledges that examination may be of benefit to the Defendant. Therefore, the Court concludes that there is a "strong indication" that an examination of the vessel "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro,* 597 F.3d at 621 (quoting *Lloyd,* 992 F.2d at 351). Consequently, while the vessel is within the possession of the Government, the Government has a duty under the federal rules to allow Defendants to inspect such evidence.

Notwithstanding the Government's duty to allow inspection, the statute establishing the obligations of a provisional conservator does not provide for indefinite possession of the decedent's personal effects. Ac-cording to the statute, the responsibilities of a provisional conservator:

> may not be performed to the extent that the decedent has left or there is otherwise appointed, in the country where the death occurred or where the decedent was domiciled, a legal representative, partner in trade, or trustee appointed to take care of his personal estate. *If the decedent's legal representative shall appear at any time prior to transmission of the estate to the Secretary and demand the proceeds and effects being held by the consular officer, the officer shall deliver them to the representative after having collected any prescribed fee for the services performed under this section.*

22 U.S.C. § 2715c(a)(3) (emphasis added). As a result, the Government's right to possess a decedent's personal effects must generally cease upon a request for those effects from the decedent's legal representative. However, if the Government's possession of the vessel ceases, the Government's obligations under Rule 16(a)(1)(E) might be extinguished.[2]

■ While such Governmental possession has not yet ceased, even if the Government's obligations under Rule 16(a)(1)(E) were to cease upon the Quest's return to the decedent's family, a federal court has the inherent power to order the preservation of evidence in the hands of a party before the Court. *Almarri v. Gates,* No. 2:05–2259–HFF–RSC, 2008 WL 4449858, at *1, 2008 U.S. Dist. LEXIS 77517, at *2–3 (D.S.C. Oct. 2, 2008); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (discussing at length the inherent powers of courts, which "are 'governed not

---

**2.** The Court need not express an opinion, on these facts, as to whether the Government's obligations under Rule 16(a)(1)(E) cease com-pletely upon physical transfer of possession when a criminal investigation or prosecution is underway.

by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution," and "cannot be dispensed with in a Court, because they are necessary to the exercise of all others"); *The Pueblo of Laguna v. United States*, 60 Fed.Cl. 133, 135 (Fed.Cl.2004) (discussing "the inherent powers afforded Article III courts to order the preservation of relevant evidence" and citing *Hudson* and *Chambers* in the course of determining that the U.S. Court of Federal Claims, as "an Article I tribunal," possesses that same power); *In re Application of Chevron Corp.*, 736 F.Supp.2d 773, 787 (S.D.N.Y.2010) ("While courts almost certainly have inherent authority to order those before them to preserve potentially relevant evidence, that authority ordinarily should not be used in the absence of some substantial basis for believing that it would serve a useful purpose.") (citing *Asset Value Fund Ltd. P'ship v. Find/Svp. Inc.*, No. 97 Civ. 3977(LAK), 1997 WL 588885, 1997 U.S. Dist. LEXIS 14304 (S.D.N.Y. Sept. 19, 1997)). "Although the precise contours of the principle are difficult to discern, it is clear that the police power[3] encompasses the government's ability to seize and retain property to be used as evidence in a criminal prosecution." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir.2008) (citing *Warden v. Hayden*, 387

U.S. 294, 309–10, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)), *cert. denied,* —— U.S. ——, 129 S.Ct. 1611, 173 L.Ed.2d 993 (2009). "Once the government has lawfully seized property to be used as evidence in a criminal prosecution, it has wide latitude to retain it so long as the investigation continues, regardless of the effect on that property." *Id.* at 1154. As a result, given the Government's obligations under the Federal Rules of Criminal Procedure and the Court's inherent authority to order the preservation of evidence, the Government is ordered to maintain possession of the Quest, in an unaltered condition, until May 31, 2011, in order to give defense counsel sufficient time to investigate the vessel.

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendant's motion and **ORDERS** the Government to maintain possession of the Quest, in an unaltered condition, until May 31, 2011, Defendants have until that date to inspect and review the vessel.

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel for the Government and for each Defendant.

**IT IS SO ORDERED.**

---

**3.** Although the Court recognizes its inherent authority to order evidence preserved in a federal criminal prosecution, it must be noted that the authority for such a prosecution is derived from the Commerce Clause of the U.S. Constitution, and not from a general

"police power, which the Founders denied the National Government and reposed in the States...." *United States v. Morrison,* 529 U.S. 598, 617, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).