United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 31, 1997 Decided January 6, 1998 

 No. 96-3053

 United States of America, 

 Appellee

 v.

 Marlon Marshall, 

 Appellant

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 95cr00201-01)

 Robert S. Becker, appointed by the court, argued the cause 
and filed the brief for appellant.

 Michael W. Wright, Assistant United States Attorney, ar-
gued the cause for appellee, with whom Eric H. Holder, Jr., 
United States Attorney at the time the brief was filed, John 
R. Fisher, Thomas J. Tourish, Jr., and M. Evan Corcoran, 
Assistant United States Attorneys, were on the brief.


 Before: Silberman, Sentelle and Garland, Circuit Judges.

 Opinion for the court filed by Circuit Judge Sentelle.

 Sentelle, Circuit Judge: Marlon Marshall appeals his 
conviction for distributing more than five grams of crack 
cocaine. Marshall argued to the district court that the gov-
ernment's disclosure of evidence during trial was untimely 
under Rule 16 of the Federal Rules of Criminal Procedure. 
On appeal, he argues that the district court abused its 
discretion when it declined to suppress the evidence or de-
clare a mistrial. We conclude that the district court did not 
abuse its discretion, and consequently affirm Marshall's con-
viction.

 I. Background

 A. The Offense

 The Drug Enforcement Administration ("DEA") believed 
Marlon Marshall was a drug dealer, and orchestrated a 
controlled drug transaction to catch him in the act. Under 
the supervision of a DEA Special Agent, a confidential infor-
mant attempted to contact Marshall by calling what the 
informant claimed was Marshall's pager number. Marshall 
returned several of these pages. During one telephone con-
versation, which was recorded on audiotape, Marshall agreed 
to sell the informant approximately 42 grams of crack for 
$1,350. Marshall and the informant further agreed to con-
duct the transaction at a McDonald's restaurant in the Dis-
trict of Columbia. The transaction, which was recorded on 
videotape, took place as planned: Marshall handed the infor-
mant a french fry box containing crack, and the informant 
gave him $1,350 cash in return.

 At the government's request, the informant attempted to 
arrange another transaction with Marshall. The informant 
contacted Marshall again by using the same pager number. 
This time, Marshall agreed to sell the informant 62 grams of 
crack for $1,750. Marshall drove a dark-colored, four-door 
Buick to the designated location, but did not go through with 
the transaction, apparently because he noticed a DEA surveil-


lance vehicle in the area. (At trial, a witness testified that 
Marshall told his companion to "put the s--- back in the car 
because the place is too hot for me.")

 Marshall was indicted for distributing more than 5 grams 
of crack cocaine in violation of 21 U.S.C. ss 841(a)(1) and 
841(b)(1)(B)(iii). The district court ordered Marshall to be 
detained pending trial.

 B. The Trial

 During voir dire examination, defense counsel announced 
that the defense might call Sabrina Shorter as a witness. 
This name was familiar to the government: when Marshall 
returned the informant's pages, caller identification equip-
ment revealed that he had done so on at least one occasion 
from Ms. Shorter's residence. Also, before trial had com-
menced, the government retrieved records which revealed 
that Ms. Shorter had visited Marshall when he was incarcer-
ated and awaiting trial. Significantly, the government turned 
over the caller identification records to the defense before 
trial, but did not disclose the jail visitation records.

 In his opening statement, defense counsel raised a defense 
of misidentification. He told the jury that Marshall was not 
the person seen selling drugs on the videotape. He also said 
that the government had no evidence to link Marshall to any 
of the phones from which the informant's pages had been 
returned:

 The evidence is going to show that though phone calls 
 are placed repeatedly to a pager number, that there are 
 no records or anything from the United States to say 
 that that was Mr. Marshall's pager. The evidence is 
 going to show that those phone calls were made back in 
 response to those pages and they got phone numbers 
 from the places where those phone calls came from. 
 They've got this caller I.D. system so that if you get a 
 phone call you can see who is calling you. Look at the 
 number. The evidence is going to show that those phone 
 calls came in from places not associated with Mr. Mar-
 shall, from homes where the people don't know Mr. 


 Marshall, because Mr. Marshall is not the person who 
 made those phone calls. That's what the evidence is 
 going to show here, ladies and gentlemen. The evidence 
 is going to show Marlon Marshall is not the person who 
 sold the drugs on May 16th, 1994.

Marshall's lawyer also claimed that the government would 
offer no evidence linking Marshall to the pager number called 
by the informant, and asserted that the evidence would show 
"nothing to corroborate" Marshall's alleged involvement with 
drug dealing.

 The first government witness to testify at trial was Frank 
Suarez, the DEA agent who supervised the informant who 
arranged the drug transactions at issue. After Agent Suarez 
finished testifying, the government notified the court that it 
wanted to introduce Marshall's previously undisclosed jail 
visitation records into evidence. Such records were relevant, 
the government explained, because they showed that Mar-
shall knew Sabrina Shorter--this fact, of course, supported 
the proposition that Marshall had returned a page from Ms. 
Shorter's residence. Defense counsel responded that the jail 
visitation records should be excluded from evidence because 
they had not been timely disclosed as required by Federal 
Rule of Criminal Procedure 16. In relevant part, that rule 
states:

 Upon request of the defendant the government shall 
 permit the defendant to inspect and copy or photograph 
 books, papers, documents, ... or copies or portions 
 thereof, which are within the possession, custody or 
 control of the government, and which are material to the 
 preparation of the defendant's defense or are intended 
 for use by the government as evidence in chief at the 
 trial....

Fed. R. Crim. P. 16(a)(1)(C). Also, as Marshall pointed out, 
the government is under a continuing duty to turn over 
evidence subject to disclosure under Rule 16 that it discovers 
before or during trial. Fed. R. Crim. P. 16(c).


 The district court adjourned for a long weekend without 
resolving the dispute over the admissibility of the jail visita-
tion records. During the recess, the parties filed motions 
addressing whether a records custodian from the District of 
Columbia Department of Corrections would be permitted to 
testify about the jail visitation records. In its motion, the 
government also sought to introduce additional evidence re-
sulting from an investigation that the government had con-
ducted during the trial: (1) pager records indicating that the 
pager number called by the informant was registered to 
Marshall; (2) the pager itself; and (3) Prince George's Coun-
ty, Maryland ("P.G. County") police records indicating that an 
officer had stopped Marshall in the same Buick that Marshall 
used during the second, aborted drug transaction. Marshall 
opposed the introduction of this additional evidence, again 
citing Rule 16.

 The government explained how it had come to discover this 
additional evidence during trial. After Agent Suarez com-
pleted his testimony, the prosecutor instructed him to conduct 
further investigation. As a result, Agent Suarez looked "in 
more detail" at some of Marshall's prior arrest records in 
P.G. County. He discovered that Marshall had a P.G. County 
arrest record under a different name, and contacted the P.G. 
County officer who had arrested him previously. That officer 
confirmed that Marshall was driving the Buick when the P.G. 
County arrest took place, and brought the pager (which had 
been confiscated during that arrest) with him to court. 
Agent Suarez then used the serial number from the pager to 
obtain records from the pager company.

 After the four-day adjournment, the district court ruled on 
the disputed evidence. The court concluded that the records 
should have been turned over "at least after opening state-
ment." However, it then held that Marshall was not preju-
diced by the late disclosure of the records, and declined to 
exclude them. As a result of this ruling, the parties agreed 
to stipulate that Marshall knew Sabrina Shorter, and that she 
had visited him on two dates in November and December of 
1995.


 With respect to the P.G. County records concerning the 
Buick, the district court criticized the government for "sloppy 
police work [and] insufficient investigation," but found that its 
decision to conduct an additional investigation in the middle 
of the trial was not a product of bad faith. Accordingly, the 
court found no violation of Rule 16, and permitted the P.G. 
County officer to testify that he had stopped Marshall in the 
Buick. (The officer, however, did not testify that he had 
arrested Marshall.)

 The district court excluded testimony concerning pager 
records that revealed that Marshall was responsible for the 
pager number, and excluded the pager as well. When mak-
ing this ruling, the district court noted that the government 
had promised not to introduce the pager records in its case-
in-chief. Finally, the district court denied Marshall's alterna-
tive motion for a mistrial.

 The jury found Marshall guilty of distributing more than 
five grams of crack cocaine. The district court subsequently 
sentenced him to 135 months of incarceration.

 II. Discussion

 A. Materiality

 Rule 16(a)(1)(C) mandates disclosure of certain evidence 
which is (1) "material to the preparation of the defendant's 
defense" or (2) "intended for use by the government as 
evidence in chief at the trial." The district court ruled that 
the disputed evidence in this case was "material to the 
preparation of [Marshall's] defense," and thus potentially 
subject to disclosure under prong one of Rule 16(a)(1)(C). 
We agree.

 The government takes issue with the district court's conclu-
sion that the disputed evidence was "material" under Rule 16. 
It notes first that all of the disputed evidence--the jail 
visitation records, the P.G. County records, the pager rec-
ords--tends to incriminate Marshall. It then reads the term 
"material" in Rule 16 to refer to "evidence that is favorable 
and helpful to a defendant's defense, not as evidence that 


impeaches or rebuts his defense." Govt. Br. at 35 n.15; see 
also id. at 22 n.10. Stressing that the disputed evidence in 
this case is not "helpful" or "exculpatory," id.; the govern-
ment concludes that such evidence is not subject to disclosure 
as "material" under Rule 16.

 The plain language of Rule 16(a)(1)(C) does not support the 
government's interpretation. This rule covers evidence which 
is material "to the preparation of the defendant's defense." 
(emphasis added). The government ignores the words we 
have just italicized, reading the rule to refer to evidence 
which is "favorable or helpful to a defendant's defense." See 
Govt. Br. at 35 n.15. The rule as written does not compel the 
conclusion that inculpatory evidence is immune from disclo-
sure. Inculpatory evidence, after all, is just as likely to assist 
in "the preparation of the defendant's defense" as exculpatory 
evidence.1 In other words, it is just as important to the 
preparation of a defense to know its potential pitfalls as it is 
to know its strengths.

 Take the facts of this case as an example: the government 
says it had no obligation under Rule 16 to disclose the jail 
visitation records to the defense because the records were not 
exculpatory. Defense counsel, flying blind, asked Agent Sua-
rez on cross-examination if he had any information connecting 
Marshall to any of the returned phone calls. He received the 
unexpected and perhaps damaging answer that the agent 
"now believe[d] that ... at least one address [on the list of 
names connected with the returned phone calls] is in fact 
connected with Mr. Marshall." With the jail visitation rec-
ords in hand, counsel would have known to avoid this mine-
field.

 Additionally, we note that the discovery obligations man-
dated by Rule 16 "contribute[ ] to the fair and efficient 

__________
 1 The Supreme Court recently clarified the meaning of the phrase 
"material to the preparation of the defendant's defense." The 
phrase "authorizes defendants to examine government documents 
material to the preparation of their defense against the Govern-
ment's case-in-chief...." United States v. Armstrong, 116 S. Ct. 
1480, 1485 (1996).


administration of criminal justice by providing the defendant 
with enough information to make an informed decision as to 
plea." Fed. R. Crim. P. 16 advisory committee note to 1974 
amendment. The government's interpretation of Rule 16 is 
at loggerheads with this policy. If the government is excused 
from its obligation to disclose incriminating evidence (and 
does not intend to introduce such evidence during its case-in-
chief), the defense must make any pre-trial plea decisions 
without knowing the true strength of the government's evi-
dence.

 To support its reading of Rule 16, the government unper-
suasively points to isolated language from our prior opinions. 
We have observed that the government must disclose Rule 16 
evidence only if such evidence "enable[s] the defendant signif-
icantly to alter the quantum of proof in his favor." United 
States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (quot-
ing United States v. Caicedo-Llanos, 960 F.2d 158, 164 n.4 
(D.C. Cir. 1992)), cert. denied sub nom. Terrell v. United 
States, 117 S. Ct. 993 (1997). But this language does not 
mean that inculpatory evidence may never be material. To 
the contrary, a defendant in possession of such evidence may 
"alter the quantum of proof in his favor" in several ways: by 
preparing a strategy to confront the damaging evidence at 
trial; by conducting an investigation to attempt to discredit 
that evidence; or by not presenting a defense which is 
undercut by such evidence.

 The government also reads one of our opinions as requiring 
evidence to be "materially exculpatory" to be subject to 
disclosure under Rule 16. See Govt. Br. at 22 n.10. The 
government misreads that opinion. In United States v. 
Lloyd, we said that evidence is material under Rule 16 "as 
long as there is a strong indication that it will play an 
important role in uncovering admissible evidence, aiding wit-
ness preparation, corroborating testimony, or assisting im-
peachment or rebuttal." 992 F.2d 348, 351 (D.C. Cir. 1993) 
(internal quotation marks and citation omitted). Although we 
used the phrase "materially exculpatory" in Lloyd, 992 F.2d 
at 351, we did so by way of illustration, not limitation. We 
did not, as the government urges, articulate a rule of general 


application that exculpatory evidence alone is subject to Rule 
16 disclosure. In any event, we see no reason why inculpato-
ry evidence could not serve the functions mentioned in Lloyd 
as well as exculpatory evidence, and the government has not 
articulated any such reason.

 B. Evidence the Government Acquired During Trial

 As we explained above, the government began a new line of 
investigation after its first witness had testified. That inves-
tigation bore fruit: among other things, the government 
discovered that Marshall had been arrested in P.G. County in 
the same Buick he had used during the second, aborted drug 
transaction in this case. Here, Marshall challenges the dis-
trict court's decision to permit the P.G. County officer to 
testify that he had stopped Marshall in the Buick.

 To be subject to disclosure under Rule 16(a), evidence must 
be "within the possession, custody or control of the govern-
ment." Fed. R. Crim. P. 16(a)(1)(C). Put another way, the 
government cannot be required to disclose evidence that it 
neither possesses nor controls. See, e.g., United States v. 
Pinto, 905 F.2d 47, 50 (4th Cir. 1990). In this case, it is not 
disputed that the government turned over the P.G. County 
records to the defense as soon as it discovered them. Thus 
there is no violation unless the term "government" as used in 
Rule 16 encompasses local law enforcement offices, such as 
the P.G. County Police Department. There is ample authori-
ty that it does not. See, e.g., United States v. Brazel, 102 
F.3d 1120, 1150 (11th Cir.), cert. denied, 118 S. Ct. 79 (1997); 
United States v. Hamilton, 107 F.3d 499, 509 n.5 (7th Cir.), 
cert. denied, 117 S. Ct. 2528 (1997). We therefore hold that 
the United States did not violate Rule 16 when it failed to 
turn over evidence it neither possessed nor controlled. See 
also United States v. Cannington, 729 F.2d 702, 712 (11th 
Cir. 1984) ("[A] party cannot produce what it doesn't have.").

 We hasten to add that our ruling is not an invitation for the 
United States to engage in gamesmanship in discovery mat-
ters. To the contrary, a prosecutor may not sandbag a 
defendant by "the simple expedient of leaving relevant evi-


dence to repose in the hands of another agency while utilizing 
his access to it in preparing his case for trial." Brazel, 102 
F.3d at 1150 (quoting United States v. Trevino, 556 F.2d 
1265, 1272 (5th Cir. 1977)). Under such circumstances, that 
evidence is "plainly within [the prosecutor's] Rule 16 'con-
trol.' " Id. In this case, there is no evidence that the 
government purposely ambushed the defense when it prof-
fered the P.G. County records during trial. Indeed, the 
district court specifically found that the government had not 
acted in bad faith, and this determination is not challenged on 
appeal.

 We need not address the pager records and pager, which 
the government also uncovered in the investigation it con-
ducted during trial: Marshall could not have been prejudiced 
by the discovery of these items because they were never 
introduced into evidence.

 C. Evidence the Government Acquired Before Trial

 The government acknowledges that prior to trial it pos-
sessed records showing that Sabrina Shorter had visited 
Marshall in jail, and that it did not disclose them to the 
defense until after the government's first witness completed 
his testimony. Was the government obligated under Rule 16 
to disclose the records earlier than that? Our answer is 
"yes."

 Even before trial commenced, the government probably 
should have realized that the jail visitation records were 
"material to the preparation of [Marshall's] defense" under 
Rule 16(a)(1)(C). It knew then that Sabrina Shorter could 
play a significant role in its case-in-chief; caller identification 
equipment revealed that one or more of the informant's calls 
were returned from her residence. It also knew or should 
have known that the jail visitation records mentioning Ms. 
Shorter would "bear[ ] some abstract logical relationship to 
the issues in the case." Caicedo-Llanos, 960 F.2d at 164 n.4 
(citation omitted). And, as we have discussed above, the fact 
that the evidence was incriminating did not relieve the gov-
ernment of its Rule 16 obligations.


 From the government's perspective, the materiality picture 
came into even sharper focus during voir dire examination, 
when the defense identified Sabrina Shorter as a potential 
witness. At that point, the government knew it had records 
relating to a person the defense had just identified as a 
potential witness. That fact alone plainly triggered the gov-
ernment's disclosure obligations under Rule 16. The defense 
counsel's opening statement, telling the jury that the govern-
ment would present no evidence linking Marshall to the 
phone numbers from which the informant's pages had been 
returned, shows that the disclosure came too late. The 
government knew the statement was not true. The jail 
records in its possession provided this link, yet it waited until 
Agent Suarez had completed his testimony to disclose the 
records. By waiting too long to disclose the jail visitation 
records, the government violated its disclosure obligations 
under Rule 16.

 It does not follow, however, that the district court abused 
its discretion by failing to impose any sanctions as a result of 
the violation. The district court has wide discretion in impos-
ing a sanction if it finds that Rule 16 has been violated. The 
court may grant a continuance; prohibit the violating party 
from introducing the evidence at issue; or "enter such other 
order as it deems just under the circumstances." Fed. R. 
Crim. P. 16(d)(2). A trial judge should impose "the least 
severe sanction that will accomplish the desired result--
prompt and full compliance with the court's discovery or-
ders." United States v. Sarcinelli, 667 F.2d 5, 7 (5th Cir. 
1982); see also United States v. Gee, 695 F.2d 1165, 1169 (9th 
Cir. 1983).

 To begin, we note that although literally true, it is slightly 
misleading to say that the district court imposed no sanction 
for the government's Rule 16 violation. Because the court 
deferred its ruling on the admissibility of the jail records 
during its adjournment period, the defense received what 
amounted to a four-day continuance to ponder how it would 
confront that evidence. Ordinarily, a continuance is the 
preferred sanction for a discovery delay because it gives the 
defense time to alleviate any prejudice it may have suffered 


from the late disclosure. See United States v. Euceda-
Hernandez, 768 F.2d 1307, 1312 (11th Cir. 1985).

 Marshall complains that a continuance was not a sufficient 
sanction here because the jail visitation records disproved 
comments he had already made to the jury in his opening 
statement. He says it was "extremely damaging" to his case 
to have his lawyer promise something in his opening state-
ment which turned out to be false. Marshall's argument, 
then, amounts to this: the district court should have excluded 
the evidence to keep the jury from thinking that the defense 
had told it a lie.

 We reject this argument. To persuade us to reverse a 
conviction due to the government's discovery violation, an 
appellant must demonstrate that the violation prejudiced his 
substantial rights. United States v. McCrory, 930 F.2d 63, 
69-70 (D.C. Cir. 1991), cert. denied, 502 U.S. 1037 (1992). 
Marshall has not done so here. Marshall's attorney may not 
have known that Sabrina Shorter had visited him in jail, but 
Marshall did. He knew that his counsel's statement--"those 
phone calls came in from places not associated with Mr. 
Marshall, from homes where the people don't know Mr. 
Marshall, because Mr. Marshall is not the person who made 
those phone calls"--was false. Thus, to the extent Marshall 
suffered any prejudice because the government was able to 
disprove this false statement, the defendant--not the govern-
ment--is to blame. To the extent the government's Rule 16 
violation caused Marshall any prejudice, the district court did 
not abuse its discretion by in effect giving the defense a 
continuance to regroup and reconsider its trial strategy.

 Before us, Marshall argues that trial counsel told the jury 
that the government would not be able to link Marshall to the 
returned telephone calls "in reliance on [trial counsel's] rea-
sonable belief that the government had fully complied with 
Rule 16." Marshall Br. at 14. But Rule 16 does not prevent 
the government from introducing any new evidence after a 
trial begins; indeed, Rule 16 itself contemplates that evidence 
may be disclosed "during trial." Fed. R. Crim. P. 16(c). 
Knowing that the government might legitimately acquire and 
introduce new evidence during trial, the defense knew that 


there was a risk in telling the jury that the government would 
not link Marshall to the phone numbers from which the 
informant's pages were returned. This fact supports our 
conclusion that any prejudice Marshall suffered was self-
inflicted.

 Finally, we note that although Rule 16 gives trial judges 
the option of suppressing evidence as a result of the govern-
ment's discovery violations, such a severe sanction would 
seldom be appropriate where--as here--the trial court finds 
that the government's violation did not result from its bad 
faith and that a less drastic remedy (such as a continuance) 
will mitigate any unfair prejudice. Such a sanction would 
have been particularly inappropriate in this case because the 
effect of the disputed evidence was to disprove a statement 
that the defendant knew to be false. If the district court had 
accepted Marshall's invitation in this case to suppress the jail 
visitation records as a result of the government's discovery 
violation, that ruling would have subverted one of Rule 16's 
goals: "contributing to an accurate determination of the issue 
of guilt or innocence." Fed. R. Crim. P. 16 advisory commit-
tee note to 1974 amendment. As we have said before, "there 
is ... no right to deceive a jury as to the true facts." 
McCrory, 930 F.2d at 70.

 III. Conclusion

 Marshall's remaining arguments do not warrant extended 
discussion. For essentially the same reasons already stated, 
we conclude that the district court did not abuse its discretion 
when it denied Marshall's motion for a mistrial. We also 
reject as insufficiently developed Marshall's cursory argu-
ments concerning the government's disclosure of a surveil-
lance report and certain tape recordings. See Fed. R. App. 
P. 28(a)(6); United States v. Clarke, 24 F.3d 257, 262 (D.C. 
Cir. 1994). Finally, our decision in United States v. Holton, 
116 F.3d 1536, 1548 (D.C. Cir. 1997), forecloses Marshall's 
argument that mandatory minimum sentences for the distri-
bution of crack cocaine violate the equal protection clause of 
the Fifth Amendment.

 For the foregoing reasons, we affirm Marshall's conviction.