**UNITED STATES of America**

v.

**Kenneth COLE, Defendant.**

**No. CRIM.A. 03–160(RWR).**

United States District Court, District of Columbia.

Aug. 15, 2003.

**28.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Erica Hashimoto, Federal Public Defender for D.C., Washington, DC, for Defendant.

Charles Joseph Harkins, Jr., U.S. Attorney's Office, Washington, DC, Kenneth Behle, U.S. Attorney's Office, Community Prosecution, Washington, DC, for U.S.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Defendant Kenneth Cole is charged in a one-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (2000). Defendant has moved to dismiss the charge, arguing that § 922(g)(1) violates the Second Amendment of the U.S. Constitution, and has moved to suppress all physical evidence recovered as the fruit of what defendant argues was an unlawful warrantless search and arrest of a car passenger. Because there is no binding precedent supporting his Second Amendment challenge, defendant's motion to dismiss will be denied. Further, because defendant cannot vicariously assert a third party's Fourth Amendment right, and thus lacks standing to challenge the legality of a pat down of a passenger that resulted in the recovery of a gun from the passenger, defendant's motion to suppress the passenger's gun will be denied. Finally, because a gun recovered underneath defendant's seat was based on reasonable suspicion that he was armed, defendant's motion to suppress that gun will be denied.

### BACKGROUND

The evidence introduced at an evidentiary hearing revealed the following facts. Late on the night of March 18, 2003, witnesses told Metropolitan Police Officer Fred Knight about a small, dark blue or black four-door car with at least two occupants in it seen leaving the scene of a shooting. Two hours later, while on duty alone in his marked police cruiser just three blocks from the scene of the shooting, Knight saw a car matching that description that was driven by the defendant. The car was traveling roughly 40 to 45 miles per hour, exceeding the 25 mile per hour speed limit. Knight followed the car for eight to ten blocks and saw it run through several stop signs.[1] Knight activated his emergency lights, but the defen-

---

1. The context of Knight's testimony made clear that the defendant did not stop at the

dant did not immediately stop. Knight then activated his siren, and the defendant stopped two or three blocks later.

After the car stopped, Knight saw the defendant lean forward and to his right, near the console. Knight called for back-up and mentioned to the dispatcher that the driver had appeared to be fumbling around under his seat. When back-up arrived, Knight approached the car and obtained from the defendant his license and the car registration. While Knight ran a check on the defendant's license, the eight or nine assisting officers removed the three occupants from the car and conducted protective pat down searches for the officers' safety. A gun fell from the back seat passenger's waist during his pat down, and he was arrested. Officers then searched the car and found a loaded gun under the driver's seat where defendant had been sitting.

Defendant, who has a prior felony conviction for distribution of PCP, was arrested and charged with a violation of 18 U.S.C. § 922(g)(1), which provides in relevant part:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

## DISCUSSION

### I. Motion to Dismiss

■ Defendant has moved to dismiss the indictment. He argues that the Sec-ond Amendment affords an individual right to all citizens to "keep and bear arms." *See United States v. Emerson,* 270 F.3d 203, 260 (5th Cir.2001), *cert. denied,* 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 184 (2002). Accordingly, defendant argues, federal laws limiting this right must be reviewed under the same "strict scrutiny" standard to which laws abridging other fundamental rights protected under the Bill of Rights are subject. (Def.'s Mot. at 10.) Defendant suggests that § 922(g)(1) fails this review, arguing that since the statute encompasses all felonies, violent or non-violent, and conduct not classified as felonies in some states, it is not sufficiently narrowly tailored to achieve the compelling state interest of preventing dangerous individuals from possessing weapons. *Id.*

*Emerson* has garnered considerable attention in part because it departs from long-standing interpretations of Supreme Court precedent established in *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). *Miller* held that provisions of the National Firearms Act regulating certain types of shotguns did not violate the Second Amendment, as that Amendment extended only to the "preservation or efficiency of a well regulated militia." *Id.* at 178, 59 S.Ct. 816. The *Miller* decision was the last time the Supreme Court considered the meaning of the Second Amendment, and for over six decades since, the lower federal courts have uniformly interpreted the decision as holding that the Amendment affords "a collective, rather than individual, right" associated with the maintenance of a regulated militia.[2] *See Love v. Pepersack,* 47 F.3d 120, 124 (4th Cir.), *cert. denied,* 516 U.S. 813, 116 S.Ct. 64, 133 L.Ed.2d 27 (1995).

---

stop signs, not that he came to a full stop at each stop sign and then drove forward.

2. The D.C. Circuit has not directly considered this issue. *Fraternal Order of Police v. United States,* 173 F.3d 898 (D.C.Cir.), *cert. denied,*

Defendant argues that the *Miller* decision in fact stands only for the proposition that certain types of weapons not regularly used in a military capacity may be regulated without violating the Second Amendment. (Def.'s Mot. at 6.) This reading finds some support, most recently in the *Emerson* opinion.[3] *Emerson,* 270 F.3d at 260; *see also Printz v. United States,* 521 U.S. 898, 938 n. 1, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (Thomas, J., concurring). Other courts have recognized this as a plausible interpretation, but have rejected it as impractical in a society in which a number of highly destructive weapons, unfit for private ownership, are regularly used by the military. *See United States v. Warin,* 530 F.2d 103, 106 (6th Cir.)("If the logical extension of the defendant's argument for the holding of *Miller* was inconceivable in 1942, it is completely irrational in this time of nuclear weapons."), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976); *see also Cases v. United States,* 131 F.2d 916, 922 (1st Cir.1942), *cert. denied, Velazquez v. U.S.,* 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943). Furthermore, "no federal court has found any individual's possession of a military weapon to be 'reasonably related to a well regulated militia.' " *United States v. Hale,* 978 F.2d 1016, 1020 (8th Cir.1992), *cert. denied,* 507 U.S. 997, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993).

The *Emerson* opinion does not stand entirely alone, however. It is accompanied by an apparent shift in Department of Justice policy, reflected in the government's briefs in opposition to certiorari in *Emerson* and *United States v. Haney,* 264

F.3d 1161 (10th Cir.2001), *cert. denied,* 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 183 (2002), and an internal Justice Department memorandum from the Attorney General. "The current position of the United States, however, is that the Second Amendment more broadly protects the rights of individuals, including persons who are not members of any militia or engaged in active military service or training, to possess and bear their own firearms, *subject to reasonable restrictions designed to prevent possession by unfit persons or to restrict the possession of types of firearms that are particularly suited to criminal misuse.*" (Br. for the United States in Opp'n to Cert. at 19–20 n. 3, *Emerson* (emphasis added); Br. for the United States in Opp'n to Cert. at 5 n.2, *Haney* (emphasis added).) However striking this shift may be in light of historical precedent, what these briefs illuminate most is not the disagreement over the meaning of the Second Amendment, but rather the agreement over its appropriate limitations. *Id.* (noting that the circuits are not split over the constitutionality of any of the provisions of 18 U.S.C. § 922).

Regardless of whether defendant's interpretation of *Miller* or the Second Amendment has merit, there is no authority, including those sources cited by the defendant, that supports the proposition that a statute prohibiting felons from possessing firearms violates the Second Amendment. The *Emerson* decision itself recognizes that the individualized right advanced by that court would not necessarily extend to felons if it is otherwise proscribed by statute. *Emerson,* 270 F.3d at

528 U.S. 928, 120 S.Ct. 324, 145 L.Ed.2d 253 (1999), raised the Second Amendment issue with regard to § 922(g)(9), prohibiting persons convicted of a domestic violence misdemeanor from possessing a gun, including one that was government-issued. The court expressed uncertainty as to the exact parame-

ters of *Miller,* but declined to delve into the issue as the appellants had not raised it in the court below. *Id.* at 905–06.

**3.** For that reason, the *Emerson* court concludes that its opinion is in line with *Miller.*

261 ("As we have previously noted, it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms."). *Emerson* upheld the statute in question in that case which prohibited persons subject to restraining orders from possessing firearms. *Id.* at 261–63.

Even the Attorney General agrees that the right is not limitless. (Def.'s Mot., Attach. A.) In the internal Justice Department memorandum that defendant cites, and that gave rise to the footnotes in the *Emerson* and *Haney* briefs, the Attorney General said:

> "[t]he Court's opinion also makes the important point that the existence of this individual right does not mean that reasonable restrictions cannot be imposed to prevent unfit persons from possessing firearms ... The Department can and will continue to defend vigorously the constitutionality, under the Second Amendment, of all existing federal firearms laws."

(Def's Mot., Attach. A.)

Furthermore, the Supreme Court has previously upheld the constitutionality of federal laws prohibiting felons from possessing a firearm. *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In upholding 18 U.S.C.App. § 1202(a)(1) (1980), the predecessor to § 922(g)(1), the Court said, "[the] legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties." *Id.* at 65,

n. 8, 100 S.Ct. 915. Thus, the Eighth Circuit concluded that "it is now well-settled that Congress did not violate the Second Amendment in enacting [18 U.S.C. § 922(g)(1)]." *United States v. Waller*, 218 F.3d 856, 857 (8th Cir.2000).

Few circuits have taken up this question since the *Emerson* decision was issued, but those that have either followed their own precedent (usually following *Miller*), *see Silveira v. Lockyer*, 312 F.3d 1052, 1064–66 (9th Cir.2002),[4] *petition for cert. filed*, 72 U.S.L.W. 3093 (U.S. July 3, 2003)(No. 03–51), or avoided the Second Amendment question altogether, focusing instead on the fact that even the *Emerson* court recognized that the Second Amendment is subject to limitations. *See United States v. Price*, 328 F.3d 958, 961 (7th Cir.2003) (following Seventh Circuit precedent in rejecting Second Amendment challenge to § 922(g)(1) and recognizing that "the *Emerson* court agrees ... that rights under the [Second Amendment] can be restricted").

While how widely *Emerson* is accepted remains to be seen, it remains true that, with the exception of the Fifth Circuit, the courts of appeals have consistently held that individuals have no fundamental constitutional right to possess a firearm. *See Silveira*, 312 F.3d at 1086–87; *Hale*, 978 F.2d at 1019–1020; *United States v. Oakes*, 564 F.2d 384, 387 (10th Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); *Warin*, 530 F.2d at 106–07; *United States v. Tot*, 131 F.2d 261, 266 (3d Cir.1942), *rev'd on other*

---

**4.** In *Silveira*, the Ninth Circuit undertook a lengthy review of the Second Amendment, the *Miller* decision, and previous Ninth Circuit precedent established in *Hickman v. Block*, 81 F.3d 98, 102–03 (9th Cir.) (relying on *Miller* in rejecting challenge to California firearms statute because the Second Amendment does not protect the possession of a weapon by an individual), *cert. denied, Hickman v. County of* *Los Angeles*, 519 U.S. 912, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996), in light of the *Emerson* decision. The court upheld *Hickman*, concluding that the Second Amendment does not confer an individual right, but rather confers a collective right related to participation in a regulated militia. *Silveira*, 312 F.3d at 1066–87.

*grounds,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). Defendant's claim that § 922(g)(1) violates the Second Amendment is rejected by the vast weight of authority. His motion to dismiss will be denied.

## II. Motion to Suppress Physical Evidence

Defendant has moved to suppress all physical evidence recovered following the stop of the car. He claims that the officers had no reasonable, articulable suspicion to pat down the passengers, making the recovery of the passenger's gun unlawful, and that the recovery of the gun under defendant's seat was the fruit of the unlawful search of the passenger.

■ It is clear that there was an ample basis on which to stop the car since it was speeding and ran several stop signs. *See Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Additionally, the officers were authorized to order all of the occupants out of the car. *See Knowles v. Iowa,* 525 U.S. 113, 117–118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (citing *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)).

■ Officers can pat down an occupant of a car during a routine traffic stop if they have reason to believe the occupant may be armed. *See United States v. Mitchell,* 951 F.2d 1291, 1295–96 (D.C.Cir. 1991) (citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), *cert. denied, Zollicoffer v. U.S.,* 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992). The officer "must be able to point to 'specific and articulable facts which, taken together with rational inferences from those facts,'" would indicate the occupant may be armed. *Id.* at 1296 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. 1868). Officers can

also search the passenger compartment of a car where weapons may be stored upon reasonable, articulable suspicion that the suspect may be able to gain immediate access to weapons. *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

■ These *Terry* searches are judged objectively based on the facts as they were known to the officer at the time. *See Mitchell,* 951 F.2d at 1295. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* A " 'reasonable' reaction in this context ... turns on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* at 1296 (quoting *United States v. White,* 648 F.2d 29, 40 (D.C.Cir.1981)(quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)), *cert. denied,* 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233, 235 (1981)). Reasonable, articulable suspicion can be raised by a person's furtive movements inside a car. *Id.* at 1296. To determine whether the facts warrant the search, a court must look to the totality of the circumstances. *United States v. Savage,* 889 F.2d 1113, 1118 (D.C.Cir.1989). "The government bears the burden of proving a search was reasonable ...." *See Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■ In this case, police saw in the early morning hours a speeding car that matched the description of a car seen leaving a shooting two hours earlier in the same area. The driver kept driving for blocks after Knight turned on his emergency lights and siren, and the driver leaned forward and fumbled under his seat

after he stopped. Although the officers were authorized to stop the car and remove the occupants, the defendant has raised a serious question as to whether the articulable circumstances supported a reasonable suspicion that the passengers were armed. There is no evidence that any officer saw any weapons on or about either passenger before the pat downs occurred, that any officer saw any bulges resembling the outline of any weapons in the clothing of either passenger, or that any officer saw either passenger make any furtive movements as defendant had. However, that issue need not be reached because the defendant does not have standing to vicariously raise the passengers' Fourth Amendment rights.

■■■■■■ Fourth Amendment rights are personal rights that may not be asserted vicariously. *See Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Caicedo–Llanos,* 960 F.2d 158, 162 (D.C.Cir.1992). "Fourth Amendment jurisprudence is very clear . . .: it does not countenance the assertion of another's right to be free from unreasonable searches and seizures." *Caicedo–Llanos,* 960 F.2d at 161–62. "A defendant's 'constitutional rights are violated "only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." ' " *Id.* at 162 (citing *United States v. Burnett,* 890 F.2d 1233, 1236 (D.C.Cir.1989)(quoting *United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980)) (emphasis in original)); *see United States v. Kember,* 648 F.2d 1354, 1365 (D.C.Cir.

1980)("[T]he Supreme Court has made it clear . . . that a defendant has no standing to object to the introduction of illegally seized evidence from a third party.") (citing *Rakas* and *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). "Consequently, the suppression of illegally seized evidence 'can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.' " *Id.* (quoting *Alderman,* 394 U.S. at 171–72, 89 S.Ct. 961).

At the evidentiary hearing, defendant acknowledged that the Fourth Amendment issue he now raises is tied exclusively to whether the passengers' rights were violated. "Counsel for Mr. Cole conceded that if the Court determined that the passenger of the car was lawfully arrested, the officer could search the vehicle pursuant to that arrest." (Def.'s Supplemental Mot. at 1.) Because the defendant has neither alleged that he possesses a privacy interest in the gun that was recovered during the pat down of the passenger, nor established that *his* rights were violated by the search of the passenger, he has no standing to challenge the legality of the warrantless search of the passenger, seizure of the passenger's gun, or arrest of the passenger.[5] *See United States v. Miller,* 449 F.2d 974, 977 (D.C.Cir.1970)(rejecting defendant's Fourth Amendment challenge to a gun recovered during a warrantless search and seizure because he lacked an interest in the place where the gun was found and there was "[no] sugges-

---

**5.** The fact that the defendant does not have standing to challenge the legality of the pat down that resulted in the recovery of the passenger's gun does not, however, make the passenger's gun automatically admissible into evidence against Cole. Should the government seek to admit the passenger's gun into evidence against Cole at trial, it will bear the burden of establishing that the gun is relevant under Fed.R.Evid. 402 to the § 922(g)(1) charge against the defendant, and that the probative value of the passenger's gun is not substantially outweighed by the danger of unfair prejudice to the defendant under Fed. R.Evid. 403.

tion that the gun belonged to him. Consequently, even if the search or seizure of the gun were unlawful, [defendant had] not established that 'he himself was the victim of an invasion of privacy.' ") (quoting *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)); *United States v. Caicedo,* 85 F.3d 1184, 1191 (6th Cir.1996)(rejecting defendant's Fourth Amendment challenge to evidence recovered during a warrantless search and arrest of a passenger in a car driven by defendant because "only [the passenger's] constitutional rights were violated . . . , and it is only [the passenger] who may properly object to the use of evidence tainted by this potential illegality . . . .")(quoting *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

Defendant also cannot indirectly do what his lack of standing prohibits him from doing directly: he cannot challenge the legality of the recovery of the gun under the driver's seat based on a potentially illegal warrantless search and seizure of the passengers. In recognizing that a defendant has no standing to constitutionally challenge the introduction of evidence illegally seized from a third party, the D.C. Circuit accepted the proposition that a defendant is also precluded from challenging other evidence obtained as a result of the illegal search because it "would grant defendants the right to achieve by indirect means something that the trial court has ruled they cannot do directly, namely, challenge the searches and suppress the evidence seized." *Kember,* 648 F.2d at 1366.

 Nevertheless, the articulable circumstances on the night of March 18, 2003, warranted a suspicion that the defendant was armed. It was he who reached under his driver's seat after he had been pulled over by a marked police car operating its lights and sirens. Coupled with the offi-

cer's knowledge of the lookout he had broadcast, this furtive movement reasonably raised Knight's safety concerns while conducting this traffic stop during early morning hours. *See United States v. Green,* 465 F.2d 620, 623 (D.C.Cir.1972)(concluding that officers witnessing a driver reach under the seat while being pulled over at 2:00 a.m. was sufficient to uphold the search). The officers therefore would have been justified in patting down the defendant and searching under the driver's seat under the *Long* standard even if the first gun had not yet been discovered during the pat down of the passenger. *See Long,* 463 U.S. at 1049, 103 S.Ct. 3469. That Knight did not search under the driver's seat right away does not vitiate the fact that the articulable circumstances warranted his doing so. *See Mitchell,* 951 F.2d at 1295.

Accordingly, defendant's motion to suppress the gun recovered from the passenger, as well as the gun recovered from under the driver's seat, will be denied.

### CONCLUSION and ORDER

For the reasons set out above, it is hereby

ORDERED that the defendant's motion to dismiss be, and hereby is, DENIED. It is further

ORDERED that the defendant's motion to suppress physical evidence be, and hereby is, DENIED.